UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

**IN RE;**
RITA C. CALLAHAN, DEBTOR

**CHAPTER 7**
**BK NO. 06-11507**

**APPELLANT'S DESIGNATION OF RECORD AND STATEMENT OF ISSUES ON APPEAL**

NOW COMES the Appellant in the above captioned matter and pursuant to Fed. R. Bankr. P. 8006, hereby furnishes its Designation of Record and Statement of Issues on Appeal.

Concerning the Appellant's Designation of Record, on May 30, 2007, Document No. 54, was an Order Denying Appellant's Objection to Debtor's Claim of Exemption. The Appellant filed its Notice of Appeal to this Order, Document No. 54. Appellant believes that Documents 51 and 52, each entered on May 18, 2007 are the basis for this Court's Order. Document 51, Memorandum of Law filed by the Debtor and the Debtor's Trustee, was filed on May 18, 2007; on that same day, Appellant filed its Brief with this Court. Insofar as this Court now requires pleadings to be electronically filed, the Appellant refers the Clerk of Court of Documents 51, 52, 54 and 56 for Designation of the Record. Finally, insofar as this Court in Document No. 62 entered on June 4, 2007 issued a Judgement Order Denying the Appellant's Objection to the Debtor's Claim of Exemptions, which Judgment Order did not flow from a hearing of this Court. There is no stenographic record to be ordered by the Appellant insofar as there was no hearing on the pleadings filed with this Court.

FILED JUN 12 '07 10:43 USDCRI

Concerning the Statement of Issues on Appeal, the Appellant respectfully submits that as this Court did not schedule and conduct a hearing on either of the Memoranda or Brief filed in connection herewith, the single issue apparently is whether the Bankruptcy Court was correct in

denying the Objection of the Appellant to the Debtor's Claim of Exemptions. While there are other issues that may be presented on appeal under normal circumstances, the fact that there was no decision rendered by this Court but for the following reference :

> "For the reasons argued by the Debtor and Chapter 7 Trustee in their Joint Memorandum of Law, Doc. [51], which we adopt and incorporate herein by reference, the funds being held in escrow by the Debtor's employer and the law firm of Morneau & Murphy are property of the bankruptcy estate, and Cadle Company's Objection to Exemption in a portion of those funds is Denied."

gives the Appellant no choice but to also raise whether the Debtor and Chapter 7 Trustee Joint Memorandum of Law should have been adopted and incorporated.

The Appellant reserves the right, should events so warrant, to amend this Designation of Record and Statement of Issues on Appeal.

Respectfully submitted,
Appellants,
By its Attorneys

/s/ William J. Delaney

William J. Delaney (#3643)
TILLINGHAST LICHT LLP
10 Weybosset Street, Suite 1000
Providence, RI 02903
(401) 456-1200; (401) 456-1210 (fax)
wdelaney@tllaw.com
Dated: June 11, 2007

CERTIFICATION

I hereby certify that on this 11th day of June, 2007, a true and accurate copy of the within was filed electronically with this Court and to the following using the CM/ECF System: , Leonard J. Depasquale, AUSA, Stacy B. Ferrara, Esq., Trustee and Charles A. Pisaturo, Jr.,Esq.

/s/ William J. Delaney

@PFDesktop\::ODMA/MHODMA/TLSDMS.TLSLAW.COM;imanage;448162;1

## File an Appeal:

1:06-bk-11507 Rita C. Callahan

**United States Bankruptcy Court**

**District of Rhode Island**

Notice of Electronic Filing

The following transaction was received from Delaney, William J. entered on 6/11/2007 at 2:30 PM EDT and filed on 6/11/2007

**Case Name:** Rita C. Callahan
**Case Number:** 1:06-bk-11507
**Document Number:** 70

**Docket Text:**
Appellant Designation of Contents For Inclusion in Record On Appeal *and Statement of Issues on Appeal* Filed by William J. Delaney on behalf of The Cadle Company (related document(s)[56] Notice of Appeal filed by Creditor The Cadle Company). Appellee designation due by 6/21/2007. Transmission of Designation Due by 7/11/2007. (Delaney, William)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\wjd\My Documents\448162_1 cadle callahan designation of record and statement of issues on appeal.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1019154485 [Date=6/11/2007] [FileNumber=1286594-0 ] [5ed4ee6094e76ef99b4689e0f6cb25ae5485cd250f7d84de0d737250b5475aa9ba9 81f34d20ab312b6eccb79bee926410d9ae32effbfcf4291c6d92348b7673d]]

**1:06-bk-11507 Notice will be electronically mailed to:**

Leonard DePasquale ustpregion01.pr.ecf@usdoj.gov

William J. Delaney wdelaney@tlslaw.com, mmorrison@tlslaw.com;rarsac@tlslaw.com

Stacy B. Ferrara stacyferrara@earthlink.net, RI11@ecfcbis.com;sferraralaw@hotmail.com

Stacy B. Ferrara stacyferrara@earthlink.net, sferraralaw@hotmail.com

Charles A. Pisaturo cpisaturo@earthlink.net, patrice@pisaturolaw.necoxmail.com

**1:06-bk-11507 Notice will not be electronically mailed to:**

RI Division of Taxation
Bankruptcy Unit
co Richard P. Smith

Chief - Collection Section
One Capitol Hill
Providence, RI 02903

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

**IN RE;**
RITA C. CALLAHAN, DEBTOR

**CHAPTER 7**
**BK NO. 06-11507**

**OBJECTION TO DEBTOR'S EXEMPTION**

NOW COMES The Cadle Company ("Cadle"), a creditor herein, and hereby objects to the Debtor's Exemption as stated on Schedule C of her petition.

In support of its objection, Cadle respectfully submits that the Debtor's contention that an escrow account held by her employer E.S. Products (the "Escrow Account") is an asset of her bankruptcy estate. The Escrow Account was the subject of an Order charging the Garnishee, entered by the Providence County Superior Court on January 27, 1997, (the "Charging Order") in favor of the predecessor in interest to Cadle. Cadle respectfully submits that the Charging Order divests the Debtor from any interest in the account pursuant to prior holdings of this Court. See, *Nunally v. Barick Furniture Company, et al*, 103 Bankr. 376 (Bankr. D. R. I. 1989; in re: Mason, 153 B.R. 8. (D.R.I. 1993) . If the Escrow Account is deemed not to be an asset of the Debtor's estate, then obviously, the Debtor does not have the ability to claim the Escrow Account as an asset of her bankruptcy estate and to exempt a portion of the Escrow Account.

In light of the foregoing, Cadle respectfully requests that this Court sustain its objection to the Debtor's exemption.

Doc. 54

Respectfully submitted,
C & W ASSET ACQUISITION, L.L.C.
By its Attorneys

/s/ William J. Delaney

William J. Delaney (#3643)
TILLINGHAST LICHT LLP
10 Weybosset Street, Suite 1000
Providence, RI 02903
(401) 456-1200; (401) 456-1210 (fax)
wdelaney@tllaw.com
Dated: January 12, 2007

CERTIFICATION

I hereby certify that on this 12th day of January, 2007, a true and accurate copy of the within was filed electronically with this Court and to the following using the CM/ECF System: , Leonard J. Depasquale, AUSA, Stacy B. Ferrara, Esq., Suite B, 505 Tiogue Avenue, Coventry, RI 02816 and Charles A. Pisaturo, Jr.,Esq. 1055 Elmwood Avenue, Providence, RI 02907.

/s/ William J. Delaney

@PFDesktop\::ODMA/MHODMA/TLSDMS.TLSLAW.COM;imanage;441225;1

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

**IN RE:**
RITA C. CALLAHAN, DEBTOR

**CHAPTER 7**
**BK NO. 06-11507**

## BRIEF OF THE CADLE COMPANY

NOW COMES The Cadle Company, affiliated with C&W Asset Acquisition, LLC ("Cadle") an interested party and judgment creditor herein, and hereby furnishes this Court with its brief concerning its objection to the Debtor's claim to an escrow account (the "Escrow Account") held by her employer, E.S. Products (the "Employer"), which she lists on Schedule B as an asset of her bankruptcy estate. It is Cadle's position that the funds held in the Escrow Account are in fact not assets of her bankruptcy estate and pursuant to a prior Order of the Rhode Island Superior Court garnishing the Debtor's wages, the monies held in the Escrow Account, among other places, are those of Cadle.

Travel of the Case

The Debtor filed her voluntary petition under Chapter 7 with this Court on December 19, 2006. On January 8, 2007, the Debtor filed an Amended Schedule B with this Court (the "Amended Schedule"), a copy of which Amended Schedule is attached herewith and made a part hereof as Exhibit A.

The Amended Schedule, specifically, point 21, States: 'Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the Debtor and rights to set off claims. Give estimated value of each', references the Debtor's 'Claim to Escrow Account held by

Doc. 52

employer E.S. Products (subject to) and set aside relative to a disputed wage attachment.' The amount as set forth on the Amended Schedule is $50,000.[1]

The Debtor, on her Schedule C, claims the Escrow Account as exempt under 11 U.S.C. §522(d)(5), the so-called 'wildcard exemption'.

On January 19, 2007, the Debtor's Trustee filed an objection to the Debtor's claim of exemptions relative to the Escrow Account. On January 22, 2007, Cadle, by and through its counsel, objected to the Debtor's claim of exemptions based upon Cadle's assertion that the Escrow Account is not property of the Bankruptcy Estate under 11 U.S.C. §541(a). The Debtor by and through her counsel filed a response to the objection filed by Cadle on January 22, 2007. Subsequent to that date, there has been an exchange of information concerning the particulars as to the Escrow Account and specifically, the basis of Cadle's claim to the Escrow Account among counsel. The Debtor, her Trustee and Cadle have agreed to brief their respective positions, which has been approved by this Court.

<u>Property of the Estate - 11 U.S.C. §541(a)</u>

11 U.S.C. §541(a) states in pertinent part:

> (a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

---

1 It should be noted that in addition to the funds held in the Escrow Account, Attorney Richard Morneau of the firm of Morneau & Murphy, is holding a certain amount of monies remitted by the Debtor's employer, which monies have not been remitted to Cadle or its predecessor in interest. The Debtor's Trustee, the Debtor's counsel and counsel to Cadle are aware of the existence of these monies held by Attorney Morneau (See point 35 in the Amended Schedule-a review of the CM/ECF system as to the Debtor's case has highlighted point 35).

> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case . . .

Respectfully, if this Court considers the argument of the Debtor to have merit, it must first come to the conclusion that the Escrow Account is property of the bankruptcy estate. If it does, Cadle is relegated to the status of an unsecured creditor.

Bankruptcy treatises deal with the "importance of the concept of property of the estate":

> Section 541(a) provides that the filing of a bankruptcy petition automatically creates an estate. In a Chapter 7 case, "property of the estate" is collected by the bankruptcy trustee and sold; the proceeds from the sale of the property of the estate is then distributed to creditors. In other words, the loss of possession and ownership of property of the estate is the primary cost of a Chapter 7 bankruptcy case to the Debtor, and the receipt of the proceeds from the sale of the property of the estate is the primary benefit creditors receive from a Chapter 7 bankruptcy." See, David G. Epstein, Steven H. Nickles and James J. White, Bankruptcy § 2-8 a. (West Pub. Co. 1993) (hereinafter, "Epstein").

Cadle's rhetorical question is whether the Escrow Account constitutes property of the Debtor's estate that may be collected by the Trustee and sold. Cadle's answer to the rhetorical question is the Escrow Account is not property of the bankruptcy estate; therefore, we do not get to any selling question. In short, in all bankruptcies cases, it is necessary to know what property of the estate includes. Id.

The application in Section 541(a)(1) involves three questions:

(1) is the item in question "property" for purposes of Section 541(a)(1)?

(2) if so, what is the debtor's interest in that property? (Note that Section 541(a)(1) reaches merely the debtor's interest in the property rather than the debtor's property.)

(3) if so, did the debtor have this interest in the property as of the time of the commencement of the bankruptcy case. Id., at § 2-8 b.

The threshold requirement is that only "interest and property" can be included in the estate under Section 541(a). Charles Gordon Tabb, The Law of Bankruptcy, § 5.2 (New Foundation Press, Inc. 1997) (hereinafter "Tabb"); See also, H.R. Rep. No. 595, 95th Cong., 1st Sess. 367 (1977).

As to the debtor's interest in the property, *all* property of the debtor at the time of bankruptcy is included (emphasis in the original). And, specifically, while state law does not control the question of what is "property", bankruptcies court look to state law in determining what is the debtor's interest in that property. See Epstein, at § 2-8 b.; Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed. 2d 136 (1979).

As to the timing restriction as set forth herein, Section 541(a)(1) takes a snapshot of the debtor's assets at the moment of filing, bringing all of those assets into the estate. See Tabb, at § 5.2. To illustrate, if a debtor's property interest terminates the day before the bankruptcy is filed, that property will not become part of the estate. Id. The estate would get exactly what the debtor had – nothing. Id.

It is Cadle's position that the debtor had no interest in the Escrow Account on December 19, 2006 insofar as custody, control and the possession of the monies of the Escrow Account was divested from her years before.

Commercial Financial/SPC Acquisitions, Inc. v. Rita C. Callahan
Providence County Superior Court No. 95-0056

Cadle's position germinates from certain litigation commenced in the Providence County Superior Court in the matter entitled Commercial Financial/SPC Acquisitions, Inc. v. Rita C. Callahan, C.A. No. 95-0056 (the "Litigation"). The Litigation was grounded upon defaults existing under two notes, a demand note (the "Demand Note") and a term note (the "Term Note") executed by the debtor/defendant.

On September 17, 1996, a hearing was held on plaintiff's/creditor's motion for summary judgment and following the hearing, the said motion was granted. An order reflecting the actions undertaken by Associate Justice Israel of the Providence County Superior Court on September 17, 1996 (the "Order") was entered by the Clerk of the Providence County Superior Court on October 2, 1996. A copy of the Order is attached herewith and made a part hereof as Exhibit B. The Order provided that judgment would enter on behalf of the plaintiff on the demand note in the amount of $45,324.20 plus $405,579.98, and interest, costs and fees. Upon information and belief, the Order was not appealed by the Debtor/defendant.

Subsequent to the entry of the Order, plaintiff filed a motion to charge the garnishee, the Employer. On January 27, 1997, Associate Justice Israel of the Providence County Superior Court entered an order charging the garnishee (the "Order Granting Motion to Charge the Garnishee"). A copy of the Order Granting Motion to Charge the Garnishee is attached herewith

and made a part hereof as Exhibit C. The Order Granting Motion to Charge the Garnishee was entered by the Providence County Superior Court on January 27, 1997. In the certification of the Order Granting Motion to Charge the Garnishee, counsel for the debtor and the debtor's employer were mailed notice of the Order Granting Motion to Charge the Garnishee on January 27, 1997. Upon information and belief, the Order Granting Motion to Charge the Garnishee was neither appealed nor modified by the defendant/debtor.

As is the custom in this industry, commercial paper is often subject to sale and resale as are judgments. In the case of the Term Note and the Demand Note, the Demand Note was the subject of an acquisition between P.A.P.R. Third Limited Partnership, Commercial Financial/SPC Acquisitions, Inc., as general partner and The Cadle Company pursuant to that assignment of order dated November 12, 1999, but effective as of July 27, 1999 (the "Assignment"). A copy of the Assignment is attached herewith and made a part hereof as Exhibit D; Cadle assumed the status of the prevailing party pursuant to the terms of the Order and as such, inherited via the Assignment, the Order and the Order Granting Motion to Charge the Garnishee. Therefore, in its capacity as the holder of certain rights relative to the Order, upon the commencement of the debtor's bankruptcy case, Cadle entered its appearance and has been attempting to assert its rights therein. The Documents evidencing the Assignment have been furnished by counsel to the Debtor and her Trustee.

Rhode Island Bankruptcy Court Case Law on Garnishment and 11 U.S.C. §541(a)

The determination of whether the Escrow Account is property of the Debtor has to be further divided into analysis concerning the appropriateness of garnishment proceedings as set

forth under Rule 69 of the Superior Court Rules of Civil Procedure. Rule 69(f) states in pertinent part:

> *Attachment of Wages after Judgement.* A writ of attachment to be served as a writ of garnishment of wages after the plaintiff's claim has been reduced to judgment in any civil action shall be issued, in the same action, only upon motion and notice to the defendant in an opportunity to be heard thereon . . . (emphasis in the original)

Without rehashing the points set herein above, a garnishment order was entered by the Providence County Superior Court in the Litigation. Even when garnished funds in the form of wages are turned over/paid to the creditor/garnisher, there is an issue as to whether those wages are, in fact, property of a debtor under 11 U.S.C. §541(a). This Court has, in an opinion of April 5, 1993, indicated that "garnished funds remained property of the debtor, even after they were paid to creditor-garnisher, until a valid charging order was entered by the Superior Court." In re Mason, 153 B.R. 8 (Bankr. D. R.I. 1993). In Mason, the debtor moved to avoid a judicial lien on garnished wages and the creditor objected to the motion; "although the debtor lost physical possession of garnished funds through the collection efforts of a creditor, she was not divested of her legal interests in those funds where the requisite state court procedures were not followed to properly transfer legal title to G.E. Capital." Id. at 9. The particulars of In re Mason are not applicable in the instant action; a charging order was obtained by the plaintiff/creditor and the debtor/defendant did not, upon information and belief, ever appeal the entry of the order granting the plaintiff/creditor's motion for summary judgment, the entry of the order approving the motion to charge garnishee and the order.

In In re Nunally, decided by this Court on September 5, 1989, the debtor sought, through a motion for summary judgment, an order declaring that an attachment on wages was a judicial lien in which she possessed a property interest and that said lien impaired her exemptions to which she would be entitled to under 11 U.S.C. §522(b). In re Nunally, 103 B.R. 376 (Bankr. D.R.I. 1989). The parties stipulated that no 'charging order' was ever issued pursuant to the Rhode Island General Laws, specifically R.I.Gen.L. §10-17-7. Id. at 377.

In Nunally, this Court squarely addressed the issue of whether the debtor retains an interest in attached property after garnishment prior to the entry of a charging order. Id. The Court held following opinions to other jurisdictions that no charging order or other means of levying on the property was ever obtained by the creditor prior to the debtor's request to claim the funds as exempt. Id. at 378. Based upon these facts, we conclude that in Hodgkins, as we do here, that since no 'writ of execution or court order of disbursement' was ever obtained, the debtor continues to maintain a sufficient interest in the attached funds, to enable her to claim such funds as exempt. Id.; See also, In re Ford, 29 B.R. 364 (Bankr. W.D. Mo. 1983); In re Lewis, 21 B.R. 926 (Bankr. N.D. Ala. 1982). (these two cases held, . . ."the fundamental proposition [is] that, despite levy, the debtor remains the owner of the property seized" and "[s]eizure does not transfer title. Thus, garnished funds are owned by the debtor until the court orders the funds paid over. At that point it would appear that title passes.") Id. at 377; See also, Margot Wickman-Bennett, Earmarking in the Eighth Circuit, 79 Iowa L. Rev. 965, 983 (May 1994). ("In defining an interest in property of the debtor, many courts focus on how much control the new creditor exercises over the disposition of the funds.")

Cadle submits that an analysis of case law of this Court on the issue of garnishment and particularly, the particulars of this case cannot lead this Court to any other conclusion but that the Escrow Account is not property of the Debtor's bankruptcy estate under 11 U.S.C. §541(a) because a true charging order issued by the Rhode Island Superior Court was in effect some seven years in advance of the filing of the Debtor's case, divesting the Debtor from ownership of the Escrow Account.

Wrinkles

As with any case, there are always "Wrinkles" concerning the positions of parties in interest and in this case, Cadle respectfully submits that several concerns have arisen subsequent to the commencement of the case concerning Cadle's claim to the Escrow Account. They include the following:

1. Whether the Order granting judgment in favor of Cadle's predecessor on both the Term Note and the Demand Note may be bifurcated to permit Cadle to have purchased the Demand Note pursuant to the Assignment and assert its position as a judgment creditor herein?

2. Whether the fact that the Employer has not tendered approximately $50,000 comprising the escrow account to Cadle or its predecessors subsequent to the entry of the Order Granting Motion to Charge Garnishee has, in fact, rendered that order void?

3. Whether the Order Granting Motion to Charge Garnishee as to the period of the actual garnishment as set forth therein was properly entered by the Clerk of the Providence County Superior Court?

In response to these three points, and in no particular order, Cadle provides the following comments:

1. As to the issue concerning the validity of the Assignment, there is nothing to prohibit an agreement concerning the purchase of a judgment or portion thereof under any statutory framework of which Cadle is aware. Cadle is in the business of acquiring judgments every day. Again, there has been no appeal or modification of the Order to the Rhode Island Supreme Court. Therefore, if judgments are freely transferred/assigned on a daily basis, there is no reason to believe that any attention should be called to effectiveness of the Assignment.

2. Concerning the Order Granting the Motion to Charge Garnishee, that order was never, upon information and belief, appealed nor modified subsequent to its entry by the Clerk of Court for the Superior Court of Rhode Island. If there was any dispute concerning the sufficiency/validity/effectiveness of such an Order, the Debtor/Defendant had the ability to avail herself of several remedies subsequent to the entry of the said Order. But she did not choose to do so.

3. Concerning the fact that the Employer continued to garnish the Debtor's wages pursuant to the Order Granting Motion to Charge Garnishee and that the said wages were not remitted to either Cadle's Predecessor-in-Interest or Cadle subsequent to the entry of such order, Cadle admits that was the case. However, given that admission, does this Court have the right to void the Order Granting the Motion to Charge Garnishee? Cadle respectfully submits that it does not. Its conclusion is based on the proposition that with the entry of said order terminated any interest that the Debtor had in her to-be-garnished wages (excluding the 90 day period prior to the commencement of the filing of her voluntary petition of this Court - which the parties have previously acknowledged among themselves as inapplicable here in that there was no

garnishment within that period) was not property of the Bankruptcy Estate under 11 U.S.C. §541(a). See In re Nunally, 103 B.R..376, 377 (Bank. D R.I.1989).

In short, while Cadle admits that there are several wrinkles present here with some moisturizing cream, however, the wrinkles may be 'smoothed over', leaving Cadle to be able to look into the mirror and see what it already knows – the Escrow Account is not property of the Debtor's bankruptcy estate and, therefore, Cadle should be entitled to immediately demand its turnover.

## Conclusion

For the reasons set forth herein, Cadle respectfully submits that it is entitled to the entire amount of the Escrow Account as well as those funds held with Attorney Morneau insofar as those monies are not property of the Debtor's bankruptcy estate.

Respectfully submitted,
C & W ASSET ACQUISITION, L.L.C.
By its Attorneys

/s/ William J. Delaney

William J. Delaney (#3643)
TILLINGHAST LICHT LLP
10 Weybosset Street, Suite 1000
Providence, RI 02903
(401) 456-1200; (401) 456-1210 (fax)
wdelaney@tllaw.com
Dated: May 18, 2007

CERTIFICATION

I hereby certify that on this 18th day of May, 2007, a true and accurate copy of the within was filed electronically with this Court and to the following using the CM/ECF System: Leonard J. Depasquale, AUSA, Stacy B. Ferrara, Esq., Trustee and Charles A. Pisaturo, Jr., Esq.

/s/ William J. Delaney

@PFDesktop\::ODMA/MHODMA/TLSDMS.TLSLAW.COM;imanage;447073;1

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**IN RE: RITA C. CALLAHAN** **CHAPTER 7**

**Debtor** **BK. NO. 06-11507**

**JOINT MEMORANDUM OF LAW OF DEBTOR AND CHAPTER 7 TRUSTEE REGARDING THE CADLE COMPANY'S OBJECTION TO DEBTOR'S EXEMPTION**

Introduction

This is a contested matter over the rights to certain funds being held by the chapter 7 trustee.[1] The trustee and debtor's counsel argue that the funds belong to the bankruptcy estate, subject to the debtor's claim of exemption of $3,925.00 under her "wildcard" exemption (11 U.S.C. §522(d)(5). The Cadle Company argues that it is a creditor of the debtor, that it acquired a claim against the debtor (by assignment) and that the funds belong to it pursuant to a ten year old Rhode Island Superior Court garnishee "charging order" dating back to January 27, 1997, in favor of its alleged predecessor in interest.

**I. FACTS [2]:**

1. The Debtor filed a Chapter 7 Petition for bankruptcy on December 19, 2006.

2. In January, 1995, an entity identified as "Commercial Financial /SPC Acquisitions, Inc." filed a complaint against the debtor in the Rhode Island Superior Court (Case No. 95-0056). Attorney Gini Spaziano, who was employed by the law firm of Morneau & Murphy, represented Commercial Financial /SPC Acquisitions.

3. On October 2, 1996, the Superior Court entered an order granting a motion for summary judgment in favor of Commercial Financial /SPC Acquisitions, Inc. in the Superior Court action. See Joint Pre-Trial Order (hereinafter "JPTO") Exhibit 1.

---

[1] The funds on deposit total $52,930.86 as of April 20, 2007. There is an additional $2,163.92 being held in an escrow account by the law firm of Morneau & Murphy, which the parties expect to be turned over to the trustee.

[2] See Joint Pre-trial Order, filed on March 12, 2007 (docket #35).

Doc. 51

4. On October 2, 1996, the Superior Court entered judgment for Commercial Financial /SPC Acquisitions, Inc. in the amount of $450,904.18. See JPTO Exhibit 2.

5. On October 31, 1996, Commercial Financial/SPC Acquisitions, Inc. filed a Motion to Attach the wages of the Debtor. On December 9, 1996, the Superior Court entered an order granting the motion to attach. The debtor's employer, and therefore, the garnishee, is "E.S. Products, Inc." of Bristol, Rhode Island.

6. On January 27, 1997, the Superior Court entered an order granting the motion of Commercial Financial /SPC Acquisitions, Inc. to charge garnishee. See JPTO Exhibit 3. That order required the garnishee to forward all future sums collected on a monthly basis to "Gini Spaziano, Esquire, Morneau & Murphy, 38 North Court Street, Providence, Rhode Island".

7. Pursuant to the January 27, 1997 order (JPTO Exhibit 3), the debtor's employer, E.S. Products (the garnishee) turned over to attorney Gini Spaziano of Morneau & Murphy monies withheld from the Debtor's wages. E.S. Products also began to send monthly checks to Morneau & Murphy in accordance with the order.

8. Sometime thereafter, between January 27, 1997 and December 11, 1998, attorney Gini Spaziano left the law firm of Morneau & Murphy.

9. On December 11, 1998, Commercial Financial Services, Inc. filed a Chapter 11 petition for relief in the United States Bankruptcy Court for the Northern District of Oklahoma (Tulsa), Case No. 98-05162-R.

10. On or about November 12, 1999, an entity identified as "T.A.P.R. III LIMITED PARTNERSHIP" executed an "Assignment of Order" purporting to transfer, assign and convey,

"without recourse" unto THE CADLE COMPANY, an Ohio corporation, ("Cadle") all of its right, title, interest, powers and option in, to and under a certain Order entered on October 2, 1996 and rendered against Defendant Rita C. Callahan in the amount of $45,324.20, plus interest and costs more fully described on the attached exhibit." See JPTO Exhibit 4 (the "Assignment of Order"). The Assignment of Order was executed by "COMMERCIAL FINANCIAL/SPC ACQUISITIONS, INC. AS GENERAL PARTNER".

11. The Assignment of Order purports to assign, *not the judgment*, but all "right, title, interest, powers and options in, to and under a certain Order entered on October 2, 1996...in the amount of $45,324.20... See Exhibit 4 JPTO. The Assignment of Order is signed November 12, 1999, but recites that it is effective as of July 27, 1999.

12. The law firm of Morneau and Murphy stopped cashing the checks being sent to it by the debtor's employer E.S. Products. Checks sent to the Office of Morneau & Murphy from March 2000 through March 2001 were never cashed. See admitted facts, paragraph 12 in JPTO.

13. After Morneau & Murphy stopped cashing the checks being sent to it, the debtor's employer, E.S. Products established an escrow account at Citizens Bank, and deposited therein all withheld funds from the debtor's wages. See JPTO admitted facts paragraph 16. E.S. Products continued to garnish the debtor's wages. The escrow account is identified as "E.S. Products, Inc. Escrow Account". See JPTO Exhibit #5. E.S. Products makes no claim to the funds in the account, and it is undisputed that the funds represent the debtor's withheld wages.

14. In February, 2006 Cadle filed a motion to attach the debtor's wages in the Providence Superior Court action (Case No. 95-0056). See JPTO Exhibit 6.

15. On November 9, 2006, Cadle filed a Motion to Charge Garnishee in the Superior Court action (Case No. 95-0056). See JPTO Exhibit 7. The motion was scheduled for hearing on January 8, 2007. The debtor's bankruptcy filing (the order for relief) automatically stopped Cadle's November, 2006 motion to charge garnishee.

16. At the time of the bankruptcy filing, the Debtor's employer E. S. Products was holding the sum of $52,883.80 in the Citizens Bank escrow account. The funds on deposit with ES Products represent funds previously forwarded to the office of Morneau and Murphy between March 2000 and March 2001 which were not cashed as well as funds garnished from the Debtor's pay from April 2001 through the date of the bankruptcy filing. See JPTO Admitted Facts paragraph 16.

Ten (10) years have passed since the entry of a Superior Court order granting a motion to attach wages in favor of Commercial Financial (not Cadle).

17. The Debtor claimed a partial exemption of $3,925.00 in the escrow funds pursuant to 11 U.S.C. §522(d)(5).

18. Cadle objected to the debtor's exemption. Cadle claims that the escrow funds are not property of the bankruptcy estate because of the January 27, 1997 Superior Court "charging order" charging the debtor's employer E.S. Products (as "garnishee") with turning over certain withheld wages to Commercial Financial' s attorneys, Morneau & Murphy. JPTO Exhibit 3. Cadle claims that it owns the escrow funds.

19. The debtor and the trustee contend that the funds set aside by the debtor's employer and held in an escrow account constitute property of the debtor's bankruptcy estate

under 11 U.S.C.§541, that Cadle is not the holder of a valid judgment, and that the funds in that account are not the subject of a valid charging order.

## II. ISSUES/ARGUMENTS:

### A. There is no evidence proffered that Commercial Financial /SPC Acquisitions, Inc. had authority as a chapter 11 debtor in possession, to transfer any part of the October 2, 1996 Superior Court order.

20. No evidence has been proffered that Commercial Financial, admittedly a chapter 11 debtor at the time it purportedly executed an assignment to Cadle, had any authority from the Oklahoma Bankruptcy Court to transfer anything. A chapter 11 DIP has all the rights and powers of a trustee serving in a case under chapter 11. 11 U.S.C.§1107(a). A DIP may operate the debtor's business under 11 U.S.C.§1108. There is no evidence that Commercial Financial's business operations including the selling of its assets. Under 11 U.S.C. §363, a sale out of the ordinary course needs bankruptcy court approval. No order approving a transfer has been proffered as evidence, nor are the trustee or the debtor aware of one.

### B. Commercial Financial's "Assignment of Order", upon which Cadle relies, is invalid and/or defective.

21. The Assignment of Order upon which Cadle relies fails to specifically and/or properly identify what is being assigned. Our Supreme Court has held that an assignment is a transfer by the assignor to the assignee of all interests and rights in the assigned property. See, *Flanders & Medeiros, Inc. v. Elizabeth v. Bogosian* , 868 F.Supp 412, 420 (1994), citing *In re Apex Oil Co.*, 975 F.2d 1365, 1369 (8th Cir 1992); *Herzog v. Irace*, 594 A.2d 1106, 1108 (Me 1991). An assignment is valid if there is clear evidence of the assignor's intent to transfer her rights, and if the subject matter of the assignment is described so that it is readily identifiable.

Id. citing *Berkowitz v. Haigood,* 256 N.J. Super. 342, 606 A.2d 1157, 1159 (N.J. Super. L. 1992).

22. In this case, the assignment states that it assigns rights under a "certain Order entered on October 2, 1996 and rendered against Defendant Rita C. Callahan in the amount of $45,324.20..." The order referred to (See JPTO Exhibit 1) granted Commercial Financial's motion for summary judgment and stated that judgment *would enter* on two separate note obligations, one for $45,324.20 and one for $405,579.98 (plus costs, etc.) (emphasis supplied). Therefore, the assignment improperly identifies the order. Moreover, this order was reduced to a judgment for a total of *$450,904.18* plus attorneys fees and interest, and *not for $45,324.20*. See JPTO Exhibit 2. There is no judgment for $45,324.20 that exists. Therefore, the assignment does not readily identify that which is purportedly assigned, and as such, is invalid. Commercial Financial could not have assigned something that does not exist. (i.e., Commercial Financial could not somehow "bifurcate" the judgment and then assign a "piece" of it to Cadle). When a valid and final personal judgment is rendered in favor of a plaintiff... [t]he plaintiff cannot thereafter maintain an action on the original claim *or any part thereof,* although he may be able to maintain an action upon the judgment...." *In re Duback*, 330 B.R. 337, 339 (Bankr. D.R.I. 2005) (citing, *Restatement Second of Judgments* §18 1982)(emphasis supplied). Therefore, Cadle (as the alleged successor in interest to Commercial Financial) does not have the right to pursue the debtor on a $45,000 promissory note that merged with the October, 1996 judgment for $450,904.18.

23. The Judgment in questions is a result of two (2) separate promissory notes

executed by the Debtor in favor of Commercial Financial/SPC Acquisitions, Inc. Once the promissory notes were reduced to a single judgment, the notes are extinguished and the debtor then becomes obligated on the judgment. See *Am Jur.2d* §459. Once the judgment issued, Commercial Financial could not then somehow "bifurcate" the judgment, and then assign a "piece" of it to Cadle, particularly after a motion to attach wages had been filed and granted. If the assignment is deemed valid, then who is entitled to the funds being attached from the debtor's pay, the alleged assignee of only a portion of the judgment, or the original holder of the whole judgment? For this reason, the assignment must be deemed invalid.

24. It has long been established that Judgments can be assigned. However, generally where an assignment conveys only a portion of a debt or judgment, it is not enforceable unless the debtor or defendant has consented thereto. *Am Jur. 2d Judgments* §435, citing *Rathbone v. Ward*, 268 Ga.App. 822,603 S.E. 2d 20 (2004). In *Rathbone*, the Georgia Court reasoned that a judgment creditor should not be allowed to split a single claim into many claims thereby subjecting the debtor to a multiplicity of suits without the consent of the defendant as to do so would be prejudicial.

25. The assignment is executed by "T.A.P.R. Limited Partnership Commercial Financial/SPC Acquisitions, Inc. as General Partner", indicating that Commercial was signing the document on behalf of "T.A.P.R. Limited Partnership". But, T.A.P.R. Limited Partnership does not own the judgment. The judgment is in favor of Commercial Financial. There is no evidence to indicate what standing, power, authority or ownership rights, if any, that this

"T.A.P.R. Limited Partnership" has or ever had regarding the judgment.[3]

## C. The Charging Order upon which Cadle relies is invalid and/or defective

26. On January 27, 1997, the Superior Court entered an Order Granting Plaintiff's Motion to Charge The Garnishee (See JPTO Exhibit 3). That order, which was in favor of Commercial Financial *and not Cadle*, states:

> "Garnishee shall forward such sums to Gini Spaziano, Esquire, Morneau & Murphy, 38 North Court Street, Providence, RI 02903, and all future sums collected on a monthly basis to the above address".

27. The undersigned submit that the charging order is defective, because Rhode Island law requires a new charging order every three months. R.I. Gen. Laws §10-17-7 provides that:

> If the accounts filed by any trustee in accordance with § 10-17-2 shall disclose that the trustee is holding any wages or personal estate of the defendant, then the trustee shall be charged to the amount disclosed, if less than the judgment or decree, otherwise to the amount of the judgment or decree. At the discretion of the court, an order may be entered allowing a partial charge of those funds. ***However, no such order shall be entered in the same case more than once in a three (3) month period of time...*** (emphasis supplied).

28. The statute seems to indicate that a charging order is only effective for three (3) months, at which time the creditor would have to return to Court for another order. Commercial

[3] In fact, the original complaint filed against Rita Callahan in the Superior Court is captioned "Commercial Financial/SPC Acquisitions, Inc. v. Rita C. Callahan" and the complaint alleges that Commercial Financial was the original lender to Rita Callahan of the loan for which payment was sought. All of the foregoing begs the question "Who is TAPR Limited Partnership?, and What standing and/or involvement does it have in this case"? Notwithstanding the foregoing, Cadle's counsel gave the trustee and debtor's counsel approximately 4 inches of documents on or about May 2, 2007, including a "Contribution and Sale Agreement", dated May 1995, a "Trust Agreement", a "Servicing Agreement", and three "Amended and Restated" documents, as well as multiple exhibits, but nothing has been submitted as an exhibit to this contested matter, nor has any part of the said voluminous documents been clarified by Cadle's counsel as showing ownership.

Financial never returned to Court for another order. Furthermore, Cadle never obtained a charging order in its own favor.[4]

29. Furthermore, the debtor's employer did exactly what the charging order required it to do. It withheld funds from the debtor's pay check and then it remitted those funds on a monthly basis to the law firm of Morneau & Murphy. However, the law firm of Morneau and Murphy stopped cashing the checks being sent to it by the debtor's employer E.S. Products, thereby impliedly waiving any further right to the attachment. (See, *Sturbridge Home Builders, Inc. As nominee of Seaport Home Builders, Inc. V. Downing Seaport, Inc., et al.* 890 A.2d 58, 65 (RI 2005) standing for the proposition that an implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it. Checks sent to the Office of Morneau & Murphy from March 2000 through March 2001 were never cashed. (See JPTO Admitted fact #12).

30. Even if the charging order were still effective today, then by its very terms it would only require the debtor's employer to continue to send the collected wages to Commercial Financial's then lawyer "Gini Spaziano". The order does not mention Cadle, nor does the order, by its terms, inure to the benefit of any successors or assigns of Commercial Financial. One can conclude that this is precisely the reason why Cadle sought to obtain its own charging order, until the debtor's bankruptcy filing stopped it. Furthermore, when the funds were being sent to

---

[4] One can conclude that Cadle knew that it needed a charging order because in November of 2006, it filed its *own* Motion to Charge Garnishee (See JPTO Exhibit 7).

Morneau & Murphy pursuant to the terms of the order and the checks were not being cashed, this resulted in an implied waiver of the rights under the charging order in favor of Commercial Financial, and Cadle is estopped from attempting to enforce the same some ten (10) years later.[5]

31. In *In re Mason* 153 B.R. 8 (Bankr. D.R.I. 1993), this Court, in following its earlier case of *In re Nunally*, 103 B.R. 376 (Bankr. D.R.I. 1989) stated that even garnished funds remain property of the debtor until a *valid* charging order is entered by an appropriate state court. *In re Mason* 153 B.R. 8, 9 (Bankr. D.R.I. 1993) (emphasis supplied). In *Nunally*, this Court held that garnished funds are owned by the debtor until the Court orders the funds paid over. *In re Nunally*, 103 B.R. at 377. As in *Nunally* and *Mason*, the debtor here still owns the funds because Cadle does not possess a proper and valid state court order in its favor. The Superior Court order upon which Cadle relies does not help it, nor does the assignment.

**D. There is no lien or attachment against the escrow account.**

32. The escrow account established by the debtor's employer E. S. Products and which held the deposited withheld wages, was not established by any court order, but out of an abundance of caution (after the Morneau & Murphy firm stopped accepting its checks). The account is not subject to any liens or attachments of any kind. The funds in that account, clearly traceable to the debtor's withheld wages, belong to her estate.

**E. Any garnishment of funds or wages within 90 days of the bankruptcy filing constitute an avoidable preferential transfer.**

---

[5] Cadle might argue that the reason the Morneau & Murphy law firm ceased accepting the checks from the garnishee was because by that time, the assignment to Cadle had been executed and it was no longer Commercial Financial's claim to collect. But if that were true, then it was incumbent upon Cadle to get a new charging order because the only one that existed ran only and exclusively in favor of Commercial Financial. One can conclude that Cadle knew this and therefore sought to get its own charging order in November, 2006 (see JPTO Exhibit 7).

33. The debtor received a monthly paycheck, at the end of the month.

34. The debtor filed her bankruptcy petition on December 19, 2006.

35. From September 19, 2006 - December 19, 2006, the debtor received three paychecks, one on September 30, 2006, one on October 31, 2006 and one on November 30, 2006. From each of those paychecks, the debtor's employer withheld $700, for a total withheld of $2,100.

36. If this Court were to rule in favor of Cadle, then any garnishment of wages effectuated within the 90 days prior to the bankruptcy filing would constitute avoidable preferential payments or transfers under 11 U.S.C.§547(b), because said payments would allow Cadle (as a creditor) to receive a payment on account of an antecedent debt (purportedly a 1996 judgment); at a time when the debtor was insolvent (see the bankruptcy schedules - which show insolvency); and would allow Cadle (as an unsecured creditor) to receive more than it would under a chapter 7 liquidation analysis (there is a priority income tax claim under 11 U.S.C.§507).

37. Therefore, even if this Court were to determine that Cadle has a valid and effective attachment of the wages set aside in the employer's escrow account, then any garnishment of said wages that occurred within 90 days of the bankruptcy filing (that is, $2,100) would be avoidable as a preferential transfer.

## F. Any Lien or Attachment that Cadle alleges to have is avoidable under 11 U.S.C.§522(f) to the extent of the Debtor's valid exemption under 11 U.S.C.§522(d)(5)

38. Cadle claims to have a valid judicial lien on the debtor's wages pursuant to an assignment of order. A judicial lien is avoidable under 11 U.S.C.§522(f) to the extent that such

lien impairs the debtor's exemption in such property.

39. If this Court finds that Cadle has a lien on the escrow account, then that lien impairs the debtor's allowable exemption up to the amount of $3,925.

**CONCLUSION**

For the foregoing reasons, this Court should overrule the objection to exemption filed by The Cadle Company, and determine that the escrow account funds, and the funds being held by Morneau & Murphy constitute property of the estate under 11 U.S.C. §541, and that the debtor has a valid and allowable exemption in the account funds to the extent of $3,925, and for such other and further relief as is just.

Respectfully submitted,

STACY B. FERRARA, CH. 7 TRUSTEE
By her attorneys,

Date: May 18, 2007

/s/ Stacy B. Ferrara
STACY B. FERRARA, TRUSTEE
505 Tiogue Avenue, Suite B
Coventry, RI 02903
Tel.: (401) 823-7991
Fax: (401) 823-4040

The Debtor, Rita Callahan, by her attorney,

Date: May 18, 2007

/s/Charles A. Pisaturo, Jr.
CHARLES A. PISATURO, JR. (REG. NO. 4615)
Law Offices of Charles A. Pisaturo, Jr.
1055 Elmwood Avenue
Providence, RI 02907
TEL: (401) 274-3800
FAX: (401) 751-6786

## CERTIFICATE OF SERVICE

Leonard J. DePasquale, Esq. (ECF)
Assistant United States Trustee
United States Trustee's Office
10 Dorrance Street, Suite 910
Providence, RI 02903
leonard.j.depasquale@usdoj.gov

Stacy B. Ferrara, Esq. (ECF)
Law Office of Stacy Bettez Ferrara
505 Tiogue Avenue, Suite B
Coventry, RI 02816
stacyferrara@earthlink.net

William J. Delaney, Esq. (ECF)
Tillinghast Licht LLP
Ten Weybosset Street
Providence, RI 02903
wdelaney@tlslaw.com

I hereby certify that on the 18TH day of May, 2007, I served by electronic filing (ECF), a true copy of the **JOINT MEMORANDUM OF LAW OF DEBTOR AND CHAPTER 7 TRUSTEE REGARDING CADLE COMPANY'S OBJECTION TO DEBTOR'S EXEMPTION** to the above named.

/s/Patrice A. Moone
Patrice A. Moone

c:\clients\callahan rita\pleadings\Memo Law.wpd

| Attorney or Appellant Name, Address , Telephone, and Fax Number<br>William J. Delaney, Esq. (#3643)<br>Tillinghast Licht LLP<br>10 Weybosset Street<br>Providence, RI 02903<br>(401) 456-1200; (401) 456-1210 (fax)<br>*Attorney for Appellant* | FOR COURT USE ONLY |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF RHODE ISLAND** | |
| In re:<br>Rita C. Callahan<br>Debtor (s) | |
| Debtor's Social Security No(s). xxx xx 6204 | CHAPTER 7<br>CASE NUMBER 06-11507 |
| Employer's Tax Identification Nos. [if any] | ADVERSARY NUMBER |

## NOTICE OF APPEAL

1. NOTICE IS HEREBY GIVEN that the (check only one box) ☐ plaintiff ☐ defendant or ☒ other party (specify name of party) The Cadle Company/ C&W Acquisition Company, LLC, appeals under 28 U.S.C. section 158(a) or (b) from the judgment, order, or decree of the bankruptcy judge (describe judgment, order or decree) ordered entered in this adversary proceeding or other proceeding (describe other proceeding) in the Debtor's case on the 30th day of May, (year) 2007.

2. The names of all parties to the judgment, order, or decree appealed from and the names, addresses, telephone, and fax numbers of their respective attorneys are as follows:

   (Print or type names, addresses, telephone, and fax numbers)

Stacy B. Ferrara, Trustee
505 Tiogue Avenue, Suite B
Coventry, RI 02816
(401) 823-7991

Charles A. Pisaturo, Jr., Esq.
1055 Elmwood Avenue
Providence, RI 02903
(401) 274-3800

**CONTINUED ON NEXT PAGE**



Doc. 56

Notice of Appeal - Page Two (2)

**Form 17**

| In re (SHORT TITLE) | CHAPTER 7 |
| --- | --- |
| Rita C. Callahan Debtor. | CASE NUMBER 06-11507 |

Dated: June 1, 2007

/s/William J. Delaney
Signature (*Attorney for Appellant or Appellant if not represented by an Attorney*)

(Print or type name, address, telephone and fax numbers)

**If a Bankruptcy Appellate Panel Service is authorized to hear this appeal, each party has a right to have the appeal heard by the district court. The appellant may exercise this right only by filing a separate statement of election at the time of the filing of this notice of appeal. Any other party may elect, within the time provided in 28 U.S.C. section 158 (c), to have the appeal**

## PROOF OF SERVICE

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

1. I am employed in the County of Providence, State of Rhode Island. I am over the age of 18 and not a party to the within action. My business address is as follows:

2. ~~Regular Mail~~ Service: On June 1, 2007, I served the documents described as: NOTICE OF APPEAL on the interested parties at their last known address in this action by ~~placing a true and correct copy thereof in a sealed envelope with postage thereon fully prepaid in the United States Mail at~~ __________, ~~Rhode Island, addressed as set forth below.~~

by CM/ECF to the following:

Stacy B. Ferrara, Trustee and Charles A. Pisaturo, Jr., Esq.

☐ Addresses continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:

William J. Delaney
*Type Name*

/s/William J. Delaney
*Signature*

*UNITED STATES BANKRUPTCY COURT*
*FOR THE DISTRICT OF RHODE ISLAND*
*380 Westminster Street, 6th Floor*
*Providence, RI 02903*
*www.rib.uscourts.gov*
*(401)626-3100*

---

**Rita C. Callahan**

Debtor(s)

BK No. **1:06-bk-11507**

Chapter 7

Judge: **Arthur N. Votolato**

---

## *JUDGMENT ORDER*

Pursuant to the order entered this date, judgment is hereby entered regarding;

**Judgment Order re: [54] Order Denying Objection of The Cadle Company to the Debtor's Claim of Exemptions.**

Judgment #: 1:06–bk–11507 – 62 – 54

Susan M. Thurston
Clerk, US Bankruptcy Court

Entered on Docket: **6/4/07**
Document Number: ***62 - 54***

By: **LLC**
Deputy Clerk

judgement.jsp #404

Doc. 62