**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**THE CADLE COMPANY**
**Appellant**

**vs.**

**RITA CALLAHAN and STACY B. FERRARA, TRUSTEE**
**Appellees**

**C.A. 07-206ML**

**ON APPEAL** From The United States Bankruptcy Court For The District of Rhode Island

# BRIEF OF APPELLANT

William J. Delaney (#3643)
Tillinghast Licht LLP
10 Weybosset Street
Providence, Rhode Island 02903
Tel: (401) 456-1225; Fax: (401) 456-1210
wdelaney@tllaw.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION . . . . . . . . . 1

II. STATEMENT OF ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV. SUMMARY OF APPELLANT'S ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V. APPELLANT'S ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. An analysis of 11 U.S.C. § 541 can only conclude that the Escrow Account was not property of the Appellee Debtor's Bankruptcy Estate on December 19, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B. If the Appellee Debtor had no interest in the Escrow Account on December 19, 2006, the Appellee Trustee has no interest in administering the Escrow Account on behalf of the Appellee Debtor's creditors . . . . . . . . . . . . . . . 7

C. The Escrow Account was clearly not property of the Appellee Debtor's bankruptcy estate because she had no legal or equitable interest in it from its creation going forward up to December 19, 2006 . . . . . . . . . . . . . . . . . . . . . 8

D. Rhode Island Bankruptcy Court Case Law on Rhode Island Garnishment Procedures is conclusive that the Escrow Account and any monies held on or aiding in garnishment actions with charging orders do not constitute property of the Appellee Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

E. From a commercial law perspective and applying economic principles, the Bankruptcy Court's entry of the Order has the potential of wrecking havoc on the commercial paper industry . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VII. APPELLANT'S RESERVATION OF RIGHT TO FILE SUPPLEMENT TO BRIEF . . . 13

VIII. CERTIFICATE OF COMPLIANCE WITH RULE 32(a) . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

**Page**

### FEDERAL AND STATE CASES

Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed. 2d 136 (1979) . . . . . . . . . . . . . . . . 6

Commercial Financial/ SPC, Acquisitions, Inc. v. Rita C. Callahan, C.A. No. 95-56 . . . . . . . . . 1

Curtis Mfg. Co., Inc. v. Plati-Clip Corp., 933 F. Supp. 107 (D. N.H. 1995) . . . . . . . . . . . . . . . . . 8

In re Mason, 153 B.R. 8 (Bankr. D. R.I. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Nunally, 103 B.R. 376 (Bankr. D.R.I. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Ford, 29 B.R. 364 (Bankr. W.D. Mo. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Lewis, 21 B.R. 926 (Bankr. N.D. Ala. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Heerlein, 336 B.R. 148, 149 (Bank. W.D. Mo. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

### FEDERAL AND STATE STATUTES, RULES AND REPORTS

11 U.S.C. § 522(d)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11 U.S.C. § 522(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11 U.S.C. § 541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

11 U.S.C. § 542 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11 U.S.C. § 543 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11 U.S.C. § 544 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 158(a)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 1334(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

R.I. Gen. Laws § 10-17-1, *et seq* . . . . . . . . . . passim

R.I. Gen. Laws § 10-17-7 . . . . . . . . . . 10, 11

R.I. Superior Ct. R. Civ. Pro., R. 69(f) . . . . . . . . . . 9

H.R. Rep. No. 595, 95th Cong., 1st Sess. 367 (1977) . . . . . . . . . . 6

**OTHER AUTHORITIES**

David G. Epstein, Steven H. Nickles & James J. White, Bankruptcy § 2-8(a) (West Publ'g. Co. 1993) . . . . . . . . . . 5, 6

Charles Gordon Tabb, The Law of Bankruptcy, § 5.2 (New Foundation Press, Inc. 1997) . . . . . . . . . . 6, 7

Margot Wickman-Bennett, Earmarking in the Eighth Circuit, 79 Iowa L. Rev. 965, 983 (May 1994) . . . . . . . . . . 11

## I. STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Appellant The Cadle Company respectfully asserts that within the relevant appeals period under the United States Bankruptcy Rules, the Appellant filed its appeal to the Order of the United States Bankruptcy Court for The District of Rhode Island (the "Bankruptcy Court"), dated May 30, 2007 (the "Order") and elected to 'opt out' of appealing the Order to the United States Bankruptcy Appellate Panel for the First Circuit by filing its appeal before the United States District Court for the District of Rhode Island. Jurisdiction lies in United States Code, Titles 11, 28 U.S.C. §§ 157, 158(a)(i) and 1334(a).

## II. STATEMENT OF ISSUE

A. Did the Bankruptcy Court Err in Denying the Objection of the Appellant to the Appellee Debtor's Claim of Exemptions?

## III. STATEMENT OF THE CASE

### A. Nature of the Case

Appellant appeals the Order to this Court from the Bankruptcy Court's determination of the effectiveness of the garnishment statute under the Rhode Island General Laws, 10-17-1, *et seq*.

### B. Statement of Facts

Appellant submits that there is no Joint Statement of Stipulated Facts submitted before the Bankruptcy Court. Therefore, Appellant furnishes this Court its version of the facts presented to the Bankruptcy Court as set forth in its brief dated May 18, 2007 (the "Bankruptcy Brief").

Appellant's position germinates from certain litigation commenced by a predecessor-in-interest in the Providence County Superior Court (the "Superior Court") in the matter entitled, Commercial Financial/ SPC, Acquisitions, Inc. v. Rita C. Callahan, C.A. No. 95-56 (the "Litigation"). The Litigation was grounded upon defaults existing under two notes, a demand note

(the "Demand Note") and a term note (the "Term Note") executed by Rita Callahan (the “Appellee Debtor”) in favor of the Appellant's predecessor-in-interest.

On September 17, 1996, a hearing was held on the Appellant's predecessor-in-interest's Motion for Summary Judgment. Following the hearing, said motion was granted. An order reflecting the actions undertaken by the Associate Justice Israel of the Superior Court on September 17, 1996 (the "1996 Order") was entered by the Clerk of the Superior Court on October 2, 1996. The 1996 Order entered judgment on behalf of the Appellant on the Demand Note in the amount of $45,324.20, and as to the Term Note, the amount of $405,579.98, plus interest, costs and fees. The 1996 Order was not appealed by the Appellee.

Subsequent to the entry of the 1996 Order, the Appellant's predecessor-in-interest filed a Motion to Charge the Garnishee, the Appellee Debtor's employer, E.S. Products (the "Employer"). On January 27, 1997, the Associate Justice Israel of the Superior Court entered a Order Charging the Garnishee (the "Charging Order"). The Charging Order was entered by the Superior Court on January 27, 1997. The Charging Order was neither appealed nor modified by the Appellee.

As is the custom in the commercial paper industry, negotiable instruments/drafts are subject to sale and resale as are judgments. In the case of the Term Note and Demand Note, the Demand Note was subject by an acquisition by P.A.P.R. Third Limited Partnership, Commercial Financial/SPC Acquisitions, Inc. as general partner and the Appellant pursuant to that Assignment of Order dated November 12, 1999, but effective as of July 27, 1999 (the "Assignment"). Under the terms of the Assignment, the Appellant effectively assumed the status of the Appellant's predecessor-in-interest/prevailing party pursuant to the terms of the 1996 Order and acquired interest in, via the Assignment, the 1996 Order and the Charging Order.

The Appellee Debtor filed her Voluntary Petition under Chapter 7 with the Bankruptcy Court on December 19, 2006. Stacy B. Ferrara was appointed the Appellee Debtor's trustee (the "Appellee Trustee"). On January 8, 2007, the Debtor filed an Amended Schedule B with the Bankruptcy Court (the "Amended Schedule"). The Amended Schedule, specifically, point 21, states: 'other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the Debtor and rights to setoff claims. Give estimated value of each', references the Appellee's 'Claim to Escrow Account held by Employer E.S. Products (subject to) and set aside relative to a disputed wage attachment'. The amount set forth by the Appellee Debtor in the Amended Schedule is $50,002.00. The Appellant, under Schedule C to her Voluntary Bankruptcy Petition, claimed the Escrow Account as exempt under 11 U.S.C. § 522(d)(5), the so-called 'wild card exemption'.

On January 19, 2007, the Appellant Trustee filed an objection to the Appellee Debtor's claim of exemptions relative to the Escrow Account. On January 22, 2007, the Appellant, by and through its counsel, objected to the Appellee Debtor's claim of exemptions based upon the Appellant's assertion that the Escrow Account was now property of the Appellee's bankruptcy estate under 11 U.S.C. § 541(a). The Appellee Debtor, by and through her counsel, filed a response to the Appellant's objection on January 22, 2007. Following the submission of briefs by each of the Appellant and the Appellees on May 30, 2007, the Bankruptcy Court entered the Order. On June 1, 2007, Appellant filed its Notice of Appeal of the Order.

## IV. SUMMARY OF APPELLANT'S ARGUMENT

Creditors of debtors in Rhode Island are blessed in one way that there is a means of consistency in attempting to assert claims based upon debts as set forth under the framework of the

Rhode Island General Laws as well as the Rhode Island Superior Court Rules of Civil Procedure. The Appellant purchased a judgment against a debtor who some ten (10) years following its entry found itself completely stripped of the benefits of the judgment by the Bankruptcy Court by the entry of the Order.

Appellant will demonstrate through its brief that the Bankruptcy Court erred in permitting the Appellee to claim/include those funds being held by the Employer pursuant to the Charging Order as an asset of her bankruptcy estate. The fallout of the Order notwithstanding its procedural difficulties causes chaos and uncertainty to those practitioners of commercial law here in Rhode Island and sends a mixed message to those participants in the commercial paper industry throughout the United States as well as the world, as to the reliability of purchasing Rhode Island judgments of the Rhode Island commercial paper industry and seeking to enforce same subsequent to purchase. Appellant submits that following a review of its brief, this Court will conclude with the recommendation by the Appellant that the decision of the Bankruptcy Court be reversed and the funds held in the Escrow Account be disbursed to the Appellant.

## V. APPELLANT'S ARGUMENT

### A. An analysis of 11 U.S.C. § 541 can only conclude that the Escrow Account was not property of the Appellee Debtor's Bankruptcy Estate on December 19, 2006.

The crux of the issues between the parties before the Bankruptcy Court below was whether the Escrow Account was property of her bankruptcy estate on the day she filed her Voluntary Petition. The Bankruptcy Court apparently concluded by its Order that it was; Appellant believes the Bankruptcy Court's conclusion was completely erroneous.

On December 19, 2006, the date of the filing of the Appellee Debtor's Voluntary Petition, the Superior Court judgment was over ten years old. Almost nine years ago, the Charging Order was entered by the Superior Court. Neither the judgment nor the Charging Order were appealed.

11 U.S.C. § 541(a) states in pertinent part:

> (a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case . . .

If this Court deems the argument herein persuasive, it must first come to the conclusion that the Bankruptcy Court erred in holding that the Escrow Account was property of the Appellee Debtor's bankruptcy estate. If it cannot arrive at that conclusion, the Appellant's appeal must be denied.. The Appellant believes that if this Court thoroughly reviews the record of the Bankruptcy Court and reconciles the Escrow Account with those pertinent provisions of 11 U.S.C. § 541(a), it will have to arrive at the conclusion that the Bankruptcy Court erred in determining the Escrow Account was property of the Appellee Debtor's bankruptcy estate to be administered by the Appellee Trustee.

Bankruptcy treatises deal with the "importance of the concept of property of the estate":

> Section 541(a) provides that the filing of a bankruptcy petition automatically creates an estate. In a Chapter 7 case, "property of the estate" is collected by the bankruptcy trustee and sold; the proceeds from the sale of the property of the estate is then distributed to creditors. In other words, the loss of possession and ownership of property of the estate is the primary cost of a Chapter 7 bankruptcy case to the Debtor, and the receipt of the proceeds from the sale of the property of the estate is the primary benefit creditors receive from a Chapter 7 bankruptcy." See, David G. Epstein, Steven H. Nickles & James J. White, Bankruptcy § 2-8(a) (West Publ'g. Co. 1993) (hereinafter, "Epstein").

As stated in Appellant's brief to the Bankruptcy Court, the rhetorical question raised from Epstein is whether the Escrow Account constitutes property of the Debtor's estate that may be collected by the Trustee and sold. The answer to the rhetorical question is in the negative; therefore, we do not get to any selling question by the Appellee Trustee. In all bankruptcy cases, it is necessary to know what property of the estate includes. Id. In the Appellee Debtor's particular case, it is clear that the Escrow Account in not inclusive of her bankruptcy estate.

The application in Section 541(a)(1) involves three questions:

(1) is the item in question "property" for purposes of Section 541(a)(1)?

(2) if so, what is the debtor's interest in that property? (Note that Section 541(a)(1) reaches merely the debtor's interest in the property rather than the debtor's property.)

(3) if so, did the debtor have this interest in the property as of the time of the commencement of the bankruptcy case. Id., at § 2-8 b.

The threshold requirement is that only "interest and property" can be included in the estate under Section 541(a). Charles Gordon Tabb, The Law of Bankruptcy, § 5.2 (New Foundation Press, Inc. 1997) (hereinafter "Tabb"); See also, H.R. Rep. No. 595, 95th Cong., 1st Sess. 367 (1977).

As to the debtor's interest in the property, *all* property of the debtor at the time of bankruptcy is included (emphasis in the original). And, specifically, while state law does not control the question of what is "property", bankruptcies court look to state law in determining what is the debtor's interest in that property. See Epstein, at § 2-8 b.; Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed. 2d 136 (1979).

Section 541(a)(1) takes a snapshot of the debtor's assets at the moment of filing, bringing all of those assets into the estate. See Tabb, at § 5.2. To illustrate, if a debtor's property interest terminates the day before the bankruptcy is filed, that property will not become part of the estate. Id. The estate would get exactly what the debtor had – nothing. Id.

Reconciling Tabb to the Appellee Debtor's case, she had no interest in the Escrow Account on December 19, 2006 insofar as custody, control and the possession of the monies of the Escrow Account was divested from her years before.

B. If the Appellee Debtor had no interest in the Escrow Account on December 19, 2006, the Appellee Trustee has no interest in administering the Escrow Account on behalf of the Appellee Debtor's creditors.

The trustee appointed to administer a debtor's case has the power to control and deal with the property of the debtor's estate as of the commencement of that debtor's case. See, 11 U.S.C. §§ 541, 542, 543 and 544. These powers enumerated under the four sections referenced in the preceding sentence are very broad and powerful; they allow a trustee to expedite circumstances that would otherwise 'bog down' a party in interest to the debtor's bankruptcy case without the benefit of the bankruptcy code.

However, if it is determined that certain property claimed by a debtor does not fall within 'property' of 11 U.S.C. § 541, that property cannot be administered by the debtor's trustee. See In re Heerlein, 336 B.R. 148, 149 (Bank. W.D. Mo. 2006). If this Court concurs with the Appellant that the Escrow Account is not property of the Appellee Debtor's bankruptcy estate, then the Appellee Trustee cannot retain any interest in the Escrow Account and the funds in the possession, custody and control of the Appellee Trustee should be remitted to the Appellant.

C. The Escrow Account was clearly not property of the Appellee Debtor's bankruptcy estate because she had no legal or equitable interest in it from its creation going forward up to December 19, 2006.

The Escrow Account was created by the Employer and funded by a percentage of the Appellee Debtor's salary earned by her employment with the Employer. The Escrow Account was also created to comply with the "Charging Order of the Superior Court to aid in the collection of the judgement entered by the Superior Court in favor of the Appellant's predecessor-in-interest.

The bankruptcy code cannot be construed to effectively divest someone of property that is rightfully theirs, and thus the debtor can only bring into estate that property which he holds both legal and equitable title. Curtis Mfg. Co., Inc. v. Plati-Clip Corp., 933 F. Supp. 107, 110 (D. N.H. 1995). This holding is crucial to Appellant's argument because the Escrow Account and the funds therein were not rightfully property of the Appellee Debtor on December 19, 2006.

On December 19, 2006, the Appellee Debtor lacked a legal as well as an equitable interest in the Escrow Account. For some nine years, the Appellee Debtor undertook no action to cause the funds held in the Escrow Account to be remitted to her. The Appellee Debtor did not take an appeal of any ruling of the Superior Court as to the judgment and the Charging Order entered by that court. The Appellee Debtor never made demand upon her Employer nor counsel to the Appellant's predecessor-in-interest to cause the funds in the Escrow Account to be released to her. Preceding the commencement of the filing of her case, counsel to the Appellee Debtor communicated with predecessor counsel to the Appellant to attempt to reach a settlement to release a portion of the funds held in the Escrow Account. While these discussions did not result in an agreement between the parties, again, the Appellee Debtor again took no steps to either set aside

the judgment or the Charging Order and simply filed her Voluntary Chapter 7 Petition with the Bankruptcy Court.

In sum, while the funds comprising the Escrow Account were formerly property of the Appellee Debtor arising from her wages from employment, the creation of the Escrow Account by the Employer effectively divested the Appellee Debtor of her legal interest in the funds therein. Therefore, the Appellee Debtor had no interest in the Escrow Account on the day she filed her Voluntary Petition, leaving the Appellee Trustee with nothing to administer as to the Escrow Account.

D. Rhode Island Bankruptcy Court Case Law on Rhode Island Garnishment Procedures is conclusive that the Escrow Account and any monies held on or aiding in garnishment actions with charging orders do not constitute property of the Appellee Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541.

Prior rulings of the Bankruptcy Court on enforceability of garnishment proceedings support the position of the Appellant that the Escrow Account is not property of the Appellee Debtor's bankruptcy estate. The analysis in these prior decisions should have been used in this case to avoid this appeal.

At issue is the appropriateness of garnishment proceedings as set forth under Rule 69 of the Rhode Island Superior Court Rules of Civil Procedure. Rule 69(f) states in pertinent part:

> *Attachment of Wages after Judgement.* A writ of attachment to be served as a writ of garnishment of wages after the plaintiff's claim has been reduced to judgment in any civil action shall be issued, in the same action, only upon motion and notice to the defendant in an opportunity to be heard thereon . . . (emphasis in the original)

The Charging Order was entered by the Superior Court in the Litigation on January 27, 1997. Even when garnished funds in the form of wages are turned over/paid to the creditor/garnisher, the issue remains as to whether those wages are, in fact, property of a debtor under 11 U.S.C. § 541(a). The Bankruptcy Court has previously held "garnished funds remained property of the debtor, even after they were paid to creditor-garnisher, until a valid charging order was entered by the Superior Court." In re Mason, 153 B.R. 8 (Bankr. D. R.I. 1993). In Mason, the debtor moved to avoid a judicial lien on garnished wages and the creditor objected to the motion; "although the debtor lost physical possession of garnished funds through the collection efforts of a creditor, she was not divested of her legal interests in those funds where the requisite state court procedures were not followed to properly transfer legal title to G.E. Capital." Id. at 9.

The facts In re Mason are distinguishable from those involving the Escrow Account; here a charging order was obtained by the Appellant's predecessor-in-interest; again, the Appellee Debtor did not ever appeal the entry of the Charging Order.

The impact of charging orders and their effect on the interests previously held by debtors has also been addressed by the Bankruptcy Court but not followed in the Order. See In re Heerlein, *infra*. Appellant refers this Court to In re Nunally, where that debtor sought, through a motion for summary judgment, an order declaring that an attachment on wages was a judicial lien in which she possessed a property interest and that said lien impaired her exemptions to which she would be entitled to under 11 U.S.C. § 522(b). In re Nunally, 103 B.R. 376 (Bankr. D.R.I. 1989). The

parties stipulated that no 'charging order' was ever issued pursuant to the Rhode Island General Laws, specifically R.I. Gen. Laws § 10-17-7. Id. at 377.[1]

The Bankruptcy Court further addressed the issue of whether the debtor retains an interest in attached property after garnishment prior to the entry of a charging order. Id. The Bankruptcy Court held following opinions to other jurisdictions that no charging order or other means of levying on the property was ever obtained by the creditor prior to the debtor's request to claim the funds as exempt. Id. at 378. Based upon these facts, we conclude that in Hodgkins, as we do here, that since no 'writ of execution or court order of disbursement' was ever obtained, the debtor continues to maintain a sufficient interest in the attached funds, to enable her to claim such funds as exempt. Id.; See also, In re Ford, 29 B.R. 364 (Bankr. W.D. Mo. 1983); In re Lewis, 21 B.R. 926 (Bankr. N.D. Ala. 1982). (these two cases held, . . ."the fundamental proposition [is] that, despite levy, the debtor remains the owner of the property seized" and "[s]eizure does not transfer title. Thus, garnished funds are owned by the debtor until the court orders the funds paid over. At that point it would appear that title passes.") Id. at 377; See also, Margot Wickman-Bennett, Earmarking in the Eighth Circuit, 79 Iowa L. Rev. 965, 983 (1994). ("In defining an interest in property of the debtor, many courts focus on how much control the new creditor exercises over the disposition of the funds.").

The Appellant asserts that an analysis of case law of this Court on the issue of garnishment and particularly, the particulars of this case cannot lead this Court to any other conclusion but that

---

[1] R.I. Gen. L. § 10-17-7 states in its pertinent part:

> ". . .then the Trustee shall be charged to the amount disclosed, . . . otherwise to the amount of the judgment or decree . . . ."

the Escrow Account is not property of the Debtor's bankruptcy estate under 11 U.S.C. § 541(a) because a true charging order issued by the Rhode Island Superior Court was in effect some seven years in advance of the filing of the Debtor's case, divesting the Debtor from ownership of the Escrow Account.

E. From a commercial law perspective and applying economic principles, the Bankruptcy Court's entry of the Order has the potential of wrecking havoc on the Commercial Paper Industry.

The impact of the Order from a commercial law perspective is cataclysmic. Bluntly, the Order calls into question the enforceability of the assignability of the judgment in the transaction consummated by the Appellant.

The goal of the Uniform Commercial Code is obvious; to ensure uniformity and to minimize the risk associated with the collectability of negotiable instruments; compliance with those pertinent provisions of Article 3 of the Uniform Commercial Code is imperative.

The Appellant tendered an agreed upon amount of consideration to acquire the underlying obligations evidenced by the Term Note and its resulting judgment and Charging Order. The purchase of such commercial paper is not new; markets for commercial paper such as the Term Note are everywhere, including Rhode Island.

The Order, however, sends a 'red flag' to those involved in the commercial paper industry, warning them that despite their thorough analysis of the risks associated with the purchase of commercial paper similar to that herein, the bankruptcy of the obligor may operate to otherwise greatly increase the risk associated with the probability of collection/recovery on the underlying obligation.

The risk associated with the transaction which inserted the Appellant in this foray increases without any logical basis from a commercial law perspective. Therefore, due to the entry of the Order, the original financing transaction will now be priced at a premium for the use of funds advanced to the increased risk associated with the particulars of the instant case. Alternatively, purchasers of such commercial paper may require the assignment to be "recourse" in nature, lower the expected value of the assignment to the Assignor.[2]

In sum, if the Order is not reversed, the means by which the free flow of the American Economy may proceed will be greatly compromised. Therefore, the Order must be reversed.

## VI. CONCLUSION

For the reasons set forth above, the Appellant respectfully requests that the Order be reversed and the matter be remanded to the Bankruptcy Court to order the Appellee to immediately cause the funds held in the Escrow Account to be remitted to the Appellant.

## VII. APPELLANT'S RESERVATION OF RIGHT TO FILE SUPPLEMENT TO BRIEF

The Appellant reserves the right to supplement its brief should events so warrant.

---

[2] Negotiable instruments are commonly bought and sold on all types of markets – private as well as public. Typically, the transfer document is an assignment which may either be 'with recourse' (the assignor continuing to remain liable on the enforceability/liability of the instrument being assigned) or 'non-recourse' (the assignor being relieved of continuing to remain liable). A 'non-recourse' transfer will normally cost the assignee less to purchase for the obvious reasons. The most prevalent example of this type of transfer is the sale of home mortgages. Lest anyone forget, the Litigation involved the assignment of a negotiable instrument; with the Order, the determination of interest rates on future negotiable instrument will only increase given the risk of non-payment increases. Therefore, the market for buying and selling commercial paper may be forever changed.

## VIII. CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style requirements

1. This brief complies with the type-volume Limitation of Fed. R. App. P. 32(a)(7)(B) because this brief uses a monospaced typeface and contains 482 number lines of text.

2. This brief complies with typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a monospaced typeface using the WordPerfect 9.0 program with 12 characters per inch in Times Roman type style.

/s/ William J. Delaney

APPELLANT
By its Attorneys,

/s/ William J. Delaney
William J. Delaney (#3643)
Tillinghast Licht LLP
10 Weybosset Street
Providence, Rhode Island 02903
(401) 456-1200; (401) 456-1210 (FAX)
wdelaney@tllaw.com

Dated: August 24, 2007

CERTIFICATION

I hereby certify that on this 24th day of August, 2007, a true and accurate copy of the within was filed electronically with this Court and to the following using the CM/ECF System: Stacy B. Ferrara, Esq. and Charles A. Pisaturo, Jr., Esq.

/s/ William J. Delaney

@PFDesktop\::ODMA/MHODMA/TLSDMS.TLSLAW.COM;imanage;451238;1